## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

VCA CENVET, INC.,

                **Plaintiff,**

   v.

VILLAGE VETERINARY
CENTERS, INC. n/k/a THE
VILLAGE VETS DECATUR, INC.,
and THE VILLAGE VETS
LILBURN-STONE MOUNTAIN,
INC.,

                **Defendants.**

                          **1:11-cv-3119-WSD**

## OPINION AND ORDER

This matter is before the Court on Village Veterinary Centers, Inc. n/k/a The

Village Vets Decatur, Inc. ("TVV-Decatur") and The Village Vets Lilburn-Stone

Mountain, Inc.'s ("TVV-Lilburn," collectively "Defendants") Motion for Partial

Summary Judgment [15].[1]

---

[1] Defendants have moved to dismiss this action on the ground that Plaintiff is not
the real party in interest and, alternatively, seek summary judgment on the breach
of contract claim in Plaintiff's Complaint.  Because the Complaint alleges a single
breach of contract claim on which Defendants seek summary judgment, it is a
misnomer to state their motion as one for "partial" summary judgment.

## I.     BACKGROUND

On July 9, 2010, Defendants entered into a Lab Services Agreement (the "Agreement") with "VCA Professional Animal Laboratories, Inc., a California corporation (d/b/a Antech Diagnostics) [("VCA PAL")]."[2]  (Ex. A to Aff. of William R. Draper, Jr., DVM (the "Agreement") at 1).  The Agreement provided that Defendants would "cause all veterinary diagnostic and clinical laboratory services ("Laboratory Services") that are to be performed for and on behalf of [Defendants'] Animal Hospital(s), to be performed by a veterinary diagnostic laboratory owned by Antech (an "Antech Lab")."[3]  (Id. ¶ 1.1) (emphasis omitted).

The term of the Agreement was for eighty-four (84) months.  (Id. at 1).  The

---

[2] VCA PAL is a company that provides veterinary laboratory services in the western United States.  VCA Cenvet, Inc. ("VCA Cenvet" or "Plaintiff") is a company that provides veterinary laboratory services in the eastern United States. Both VCA PAL and VCA Cenvet conduct business using, in some form, the common name of Antech.  Because VCA PAL and VCA Cenvet both have done business using the Antech name and the parties' references to Antech do not consistently distinguish between VCA PAL and VCA Cenvet, to avoid confusion, the Court will refer to VCA PAL and VCA Cenvet, rather than Antech.

[3] Defendants could: (1) use other laboratories provided the fees paid to other laboratories did not exceed 10% of all fees paid to VCA PAL; (2) use other laboratories "to perform any services that a Antech Lab cannot perform;" and, (3) "use laboratory equipment owned by [Defendants] and located at the Animal Hospital premises."  (Agreement ¶¶ 1.1.1-1.1.3).

Agreement included a requirement that Defendants pay a Minimum Average

Annual Fee:

> [Defendants] are required to utilize [VCA PAL] to provide
> Laboratory Services (defined below) required by Animal
> Hospital(s) in an amount equal to an average of $114,000 per
> year during the Term (the **"Minimum Average Annual Fee"**),
> in accordance with the provisions of Section 1 below.
> Notwithstanding the foregoing, the obligations of [Defendants]
> with respect to the Minimum Annual Average Fee may be met so
> long as the amount paid by [Defendants] to [VCA PAL] for
> Laboratory Services ordered during the Term hereof is at least
> $798,000.

(Id.).

Defendants also obtained a $108,000 loan (the "Loan") as part of the

Agreement.  (Id.).  While Defendants were required to make annual payments on

the Loan during the term of the Agreement, the annual loan payments were

forgiven so long as Defendants complied with certain conditions under the

Agreement, such as purchasing a minimum level of laboratory services from VCA

PAL.  (Id. ¶ 3.2).  Defendants also received, as part of the Agreement, $76,200 in

funds from VCA PAL to pay for certain laboratory equipment.  (Ex. C to Aff. of

William R. Draper, Jr., DVM at 2).

Defendants were considered to be in default on the Loan if they failed to: (1)

make their annual loan payments; (2) comply with the requirement to cause all

veterinary services to be performed by VCA PAL's laboratories; or, (3) timely pay

3

invoices for laboratory services.  (Agreement ¶ 3.3).  In the event of default, the Agreement defined the amounts due and payable by Defendants to VCA PAL. (Id.).

Section 5 of the Agreement defined the circumstances for termination of the Agreement by the parties before the agreed expiration date.  (Id. ¶ 5).  The Agreement allowed VCA PAL to terminate the Agreement with thirty (30) days notice if Defendants defaulted on the Loan or were otherwise in material breach of the terms and provisions of the Agreement.  (Id.).  Defendants also were permitted to terminate the Agreement with thirty (30) days notice if VCA PAL: "(i) fails to deliver the Laboratory Services in a reasonably prompt manner, (ii) the Laboratory Services are rendered poorly or lack quality in [Defendants'] reasonable judgment, or (iii) [VCA PAL] otherwise materially breaches this Agreement."  (Id.).

The Agreement provided that Defendants were required to "provide written notice to [VCA PAL] setting forth its concern in reasonable detail" in the event they were "not satisfied with the quality of Laboratory Services provided by an Antech Lab."  (Id. ¶ 1.2).  VCA PAL was allowed the opportunity to remedy any of the concerns stated.  (Id.).  If the remedial action taken by VCA PAL was not satisfactory to Defendants, the parties agreed to submit the issue "for binding arbitration to the Atlanta office of the American Arbitration Association, or to an

4

equivalent arbitrator located in the Atlanta metropolitan area which is mutually acceptable to both parties."  (Id.).

In the event of a termination by Defendants under the Agreement, Defendants were required to pay "all outstanding (and prorated, as applicable) principal of the Loan and accumulated interest thereon within sixty (60) days of such written notice (not including previously forgiven or discharged principal and interest)."  (Id. ¶ 5).

The Agreement further provided that:

> [VCA PAL] may not assign this Agreement without the prior consent of [Defendants], not to be unreasonably withheld, conditioned, or delayed.  This Agreement shall be binding upon and inure to the benefit of the parties hereto and their respective successors and assigns.  No provision of this Agreement may be waived unless in writing signed by all of the parties to this Agreement, and the waiver of any one provision of this Agreement shall not be deemed to be a waiver of any other provision.  This Agreement may be amended only by a written agreement executed by all of the parties to this Agreement.  This Agreement shall be governed by and construed both as to validity and performance and enforced in accordance with the laws of the State of California without giving effect to the choice of law principles thereof.

(Id. ¶ 8).

On June 13, 2011, Defendants sent a letter to VCA PAL which stated:

> Thank you for providing [Defendants] with laboratory services pursuant to the Agreement.  Pursuant to Section 5 of the Agreement, by this written notice, [Defendants] hereby elect to

> terminate the Agreement.  Thirty (30) days following the date of this notice, the Agreement will no longer be effective.  We will remit the unamortized portion of the Loan (as defined in the Agreement) and the unamortized portion of certain other concessions provided by [VCA PAL] pursuant to the Agreement no later than sixty (60) days following the date of this notice.

(Ex. B to Aff. of William R. Draper, Jr., DVM).

On July 7, 2011, Defendants sent VCA PAL a check in the amount of $211,770, which they asserted was the unamortized portion of the Loan and the unamortized portion of certain other concessions previously provided by VCA PAL pursuant to the Agreement.  (Ex. C to Aff. of William R. Draper, Jr., DVM at 1).  Defendants claimed that:

> This payment reflects the total liability due from [Defendants] to [VCA PAL] under this Agreement as a result of the termination of the Agreement prior to the completion of its term.  No further obligation or payment is or shall be due from [Defendants] to [VCA PAL] following the Termination Date [of July 13, 2011].  Deposit of, negotiation, or otherwise obtaining the funds represented by the check enclosed with this letter shall be deemed to be [VCA PAL]'s acceptance of the termination of the Agreement as of the Termination Date and acknowledgement that no further liability or monies shall be owed by [Defendants] to [VCA PAL].

(Id.).

VCA PAL never deposited, negotiated, or otherwise obtained the funds represented by Defendants' check.  (Pl.'s Statement of Additional Facts ¶ 22).

On September 14, 2011, VCA Cenvet filed this action for damages resulting from Defendants alleged breach of the Agreement.  VCA Cenvet is a wholly-owned subsidiary of VCA PAL.  (Decl. of Michael Wayne Everett ("Everett Decl.") ¶ 6).  In its Complaint, VCA Cenvet claims that VCA PAL assigned the Agreement to it.  (Compl. ¶ 6).

On October 4, 2011, Defendants filed their Answers to VCA Cenvet's Complaint.  Defendants assert that "[t]here has not been a valid assignment of the contract to Plaintiff;" Plaintiff "has failed to obtain the consent of [Defendants] to the assignment;" and, Defendants did not consent to any assignment of the Agreement to VCA Cenvet.  (Defs.' Answers at 1-2).  Defendants further allege, as a defense, that the Laboratory Services provided to them under the Agreement were not performed in a quality manner.  (Id. at 2).

On November 21, 2011, Defendants filed their Motion for Partial Summary Judgment.  Defendants assert that:

> (1) Plaintiff VCA Cenvet, Inc. is not the real party in interest and did not obtain a valid assignment of the July 9, 2010 Lab Services Agreement at issue in the case or any purported cause of action related to a purported breach of the Agreement; and (2) No matter who the real party in interest is, even assuming for argument's sake that Defendants breached the contract (which is denied), the total amount of damages Plaintiff (or the party in real interest) can recover are limited by the express terms of the parties' agreement.

7

(Defs.' Mot. for Partial Summ. J. at 1-2). In Defendants' Statement of Undisputed Facts, they assert that VCA PAL "never obtained the consent of [Defendants] to the assignment of the Agreement or any cause of action related to it." (Defs.' Statement of Undisputed Facts ("DSUF") ¶ 6).

Plaintiff admits that, prior to its Complaint being filed, it did not notify Defendants of a transfer or assignment of the Agreement to VCA Cenvet from VCA PAL. (Pl.'s Opp'n to Defs.' Mot. for Summ. J. at 9; Pl.'s Resp. to DSUF ¶ 6). Plaintiff also admits that VCA PAL did not obtain Defendants' consent to an assignment of the Agreement or any cause of action based on it. (Id.). Plaintiff claims there was a "transfer" of the Agreement to VCA Cenvet from VCA PAL because:

> After the Agreement was executed, [VCA PAL] management realized that, for a Georgia customer, Cenvet should have been the contracting party instead of PAL. Thus, the Agreement was transferred from PAL to Cenvet. There is no formal agreement memorializing this transfer because it is simply an intra-company transfer between a parent and subsidiary, and both companies are under the common ownership of VCA.

(Pl.'s Opp'n to Defs.' Mot. for Summ. J. at 9; Everett Decl. ¶ 7).

Plaintiff asserts that any intra-company transfer it made was valid and effective to transfer rights under the Agreement because "[u]nder California law, an anti-assignment clause will not bar an assignee from enforcing an assignment if

8

the assignment merely reflects a change in the assignor's legal structure which does not prejudice the other party." (Pl.'s Opp'n to Defs.' Mot. for Summ. J. at 11). Plaintiff claims this "intra-company transfer" constituted an assignment of rights under the Agreement from VCA PAL to VCA Cenvet—giving it a right to bring this action.[4] (Id. at 2, 10-11, 13-14; Everett Decl. ¶ 7).

Defendants contend that they were entitled to terminate the Agreement based on their independent determination that VCA PAL's services were poor or lacked quality, that the only monies owed upon such termination were the amounts specified in the Agreement, and, in any event, "Plaintiff is not the proper party to recover the damages." (Defs.' Reply in Supp. of Mot. for Summ. J. at 2-12).

## II.    DISCUSSION

### A.    Defendants' challenge to Plaintiff's standing to bring this action

The threshold question before the Court is whether Plaintiff has standing to bring this action and, thus, whether the Court has jurisdiction over the claims asserted. VCA Cenvet's claims are based upon the Agreement that Defendants entered into with VCA PAL. Defendants have challenged VCA Cenvet's standing to assert its breach of contract claim because it is not a party to the Agreement.

---

[4] Plaintiff has not provided any evidence of the assignment beyond the conclusory statement contained in an affidavit by VCA's Vice President and Co-General Counsel. (Everett Decl. ¶ 7).

Defendants further assert that the Agreement was not validly assigned from VCA PAL to VCA Cenvet because the Agreement requires Defendants' consent to any assignment, and consent here was not obtained prior to VCA Cenvet filing its Complaint.

VCA Cenvet asserts that, based on the corporate relationship between VCA PAL and VCA Cenvet, Plaintiff was not, under California law, required to comply with the consent to assignment clause in the Agreement.  VCA Cenvet claims that the Agreement was assigned at some point from VCA PAL to VCA Cenvet, and that, based on this transfer, VCA Cenvet became the real party in interest to the Agreement with standing to assert its breach of contract claims against Defendants. The Court must first address the standing and related real party in interest issues.

B.     Standing and real party in interest requirements

The doctrines of standing and real party in interest are distinct, both of which here bear on "who possesses a sufficient interest in the action to be entitled to be heard on the merits."  6A Charles Alan Wright, Arthur R. Miller, & Mary Kay Kane, Federal Practice and Procedure § 1542 (3d ed. 2012) (hereinafter, "Wright & Miller"); see also Whelan v. Abell, 953 F.2d 663, 672 (D.C. Cir. 1992) ("Standing and real-party-in-interest questions do overlap to the extent that both ask whether the plaintiff has a personal interest in the controversy.").  A plaintiff in

federal court is required to have standing and must be the real party in interest.  6A Wright & Miller § 1542.

Article III of the Constitution requires a plaintiff suing in federal court to have standing to assert its claims.  Sprint Commc'ns Co. v. APCC Servs., Inc., 554 U.S. 269, 273 (2008).  To have Article III standing, a plaintiff must establish: (1) an injury in fact; (2) causation, or a fairly traceable connection between the injury and the defendant's conduct; and (3) redressability.  Id. (citing Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992)).  Article III standing "must be determined as of the time at which the plaintiff's complaint is filed."  Focus on the Family v. Pinellas Suncoast Transit Auth., 344 F.3d 1263, 1275 (11th Cir. 2003); see Utah Ass'n of Cntys. v. Bush, 455 F.3d 1094, 1101 & n.6 (10th Cir. 2006) (alleged injury could not serve as basis for standing where it occurred after amended complaint had been filed).

"The party invoking federal jurisdiction bears the burden of proving standing."  See Common Cause/Georgia v. Billups, 554 F.3d 1340, 1349 (11th Cir. 2009) (quoting Bischoff v. Osceola Cnty., Fla., 222 F.3d 874, 878 (11th Cir. 2000)).  A court must carefully conduct the standing inquiry and "should not speculate concerning the existence of standing" because it lacks "the power to create jurisdiction by embellishing a deficient allegation of injury."  See

Hollywood Mobile Estates Ltd. v. Seminole Tribe of Fla., 641 F.3d 1259, 1265 (11th Cir. 2011) (citing Allen v. Wright, 468 U.S. 737, 752 (1984); DiMaio v. Democratic Nat'l Comm., 520 F.3d 1299, 1301 (11th Cir. 2008), and quoting Elend v. Basham, 471 F.3d 1199, 1206 (11th Cir. 2006)).  "If at any point in the litigation the plaintiff ceases to meet all three requirements for constitutional standing, the case no longer presents a live case or controversy, and the federal court must dismiss the case for lack of subject matter jurisdiction."  Fla. Wildlife Fed'n, Inc. v. S. Fla. Water Mgmt. Dist., 647 F.3d 1296, 1302 (11th Cir. 2011).

The real party in interest requirement comes from the Federal Rules of Civil Procedure, which state that "[a]n action must be prosecuted in the name of the real party in interest."  Fed. R. Civ. P. 17(a)(1).[5]  "In other words, the action must be brought by the person entitled under the governing substantive law to enforce the asserted right."  Whelan, 953 F.2d at 672.  Unlike standing, an objection that a plaintiff is not the real party in interest may be waived and should be asserted by the objecting party reasonably promptly.  See id.[6]

---

[5] Several courts have observed that Rule 17's real party in interest requirement is essentially the same as the principle of prudential standing that a litigant cannot sue in federal court to enforce the rights of third parties.  See, e.g., Rawoof v. Texor Petro. Co., 521 F.3d 750 (7th Cir. 2008).

[6] The Court finds Defendants raised their objection reasonably promptly.  Within the first two months of this litigation, Defendants filed their Motion for Partial Summary and asserted that "Plaintiff VCA Cenvet, Inc. is not the real party in

In lawsuits involving private rights, the standing analysis is usually subsumed within the overlapping real party in interest issue.  Whelan, 953 F.2d at 672.  "The modern function of the [real party in interest rule] . . . is simply to protect the defendant against a subsequent action by the party entitled to recovery, and to ensure generally that the judgment will have its proper effect as res judicata."  Fed. Deposit Ins. Corp. v. Main Hurdman, 655 F. Supp. 259, 267 (E.D. Cal. 1987) (citing Advisory Committee Notes to 1966 Amendment to Fed. R. Civ. P. 17).  A failure to have an interest in the litigation at the time of filing a complaint generally equates to a lack of standing.  See Focus on the Family, 344 F.3d at 1275.  Federal Rule of Civil Procedure 17's real party in interest requirement, which, in part, promotes judicial economy, allows "that even when [a] claim is not assigned until after the action is instituted, the assignee is the real party in interest and can maintain the action."  See Infodek, Inc. v. Meredith-Webb Printing Co., 830 F. Supp. 614, 620-21 (N.D. Ga. 1993) (citing cases); see also Main Hurdman, 655 F. Supp. at 267 (citing 6C Wright & Miller § 1545).  Where an assignment is alleged, "the court must assure itself that a valid assignment has

---

interest and did not obtain a valid assignment of the July 9, 2010 Lab Services Agreement at issue in the case or any purported cause of action related to a purported breach of the Agreement."  (Defs.' Mot. for Partial Summ. J. at 1).

been made." <u>Main Hurdman</u>, 655 F. Supp. at 267 (quoting 6C Wright & Miller

§ 1545).

Thus,

> [i]n an action involving an assignment, the court typically must consider two issues.  First, it must determine exactly what has been assigned to make certain that the plaintiff-assignee is the real party in interest with regard to the particular claim involved in the action. . . . Second, the court must assure itself that a valid assignment has been made.

6A Wright & Miller § 1545.

C.   <u>Validity of assignments and enforceability of consent to assignment clauses under California law</u>

"An assignment is a 'transfer or setting over of property, or of some right or

interest therein, from one person to another . . . .'" <u>Noble v. Draper</u>, 73 Cal. Rptr.

3d 3, 12 (Cal. Dist. Ct. App. 2008) (quoting Ballentine's Law Dictionary (3d ed.

1969)).

> An assignment requires very little by way of formalities and is essentially free from substantive restrictions.  "[I]n the absence of [a] statute or a contract provision to the contrary, there are no prescribed formalities that must be observed to make an effective assignment.  It is sufficient if the assignor has, in some fashion, manifested an intention to make a present transfer of his rights to the assignee."  Generally, interests may be assigned orally, and assignments need not be supported by any consideration.

<u>Amalgamated Transit Union, Local 1756, AFL-CIO v. Superior Court</u>, 209 P.3d

937, 943 (Cal. 2009) (internal citation omitted).

"In determining whether an assignment has been made, 'the intention of the parties as manifested in the instrument is controlling.'" Cal. Ins. Guar. Ass'n v. Workers' Comp. Appeals Bd., 138 Cal. Rptr. 3d 24, 28 (Cal. Dist. Ct. App. 2012) (quoting Nat'l Reserve Co. of Am. v. Metro. Trust Co. of Cal., 112 P.2d 598, 602 (Cal. 1941)). "If from the entire transaction and the conduct of the parties it clearly appears that the intent of the parties was to pass title to the [property], then an assignment will be held to have taken place." Recorded Picture Co. v. Nelson Entm't, Inc., 61 Cal. Rptr. 2d 742, 753 (Cal. Dist. Ct. App. 1997) (quoting McCown v. Spencer, 87 Cal. Rptr. 213, 219 (Cal. Dist. Ct. App. 1970)). "A complete assignment passes legal title to the assignee who is the real party in interest and may sue in his or her real name." Cal. Ins. Guar. Ass'n, 138 Cal. Rptr. 3d at 28.

Consent to assignment clauses generally are valid and enforceable under California law, with some exceptions. See Henkel Corp. v. Hartford Accident & Indem. Co., 62 P.3d 69, 74-75 (Cal. 2003). Consent to assignment clauses do not apply to assignments between corporate entities where there is common ownership of "all the corporate stock" of the assignor and assignee corporation, and where the assignment does not affect the interests of the parties protected by the consent to assignment clause. See State v. McNamara Corp. Ltd., 104 Cal. Rptr. 822, 826

(Cal. Dist. Ct. App. 1972); <u>Sexton v. Nelson</u>, 39 Cal. Rptr. 407, 413 (Cal. Dist. Ct. App. 1964) ("Where a transfer results merely from a change in the legal form of a business and does not affect the interests of the party protected by the nonassignable provisions of the lease, a breach of that provision does not occur."). California law also permits a party to transfer rights in a cause of action for breach of contract to another party without regard to a consent to assignment clause.  <u>See</u> <u>Henkel</u>, 62 P.3d at 75; <u>Baum v. Duckor, Spradling & Metzger</u>, 84 Cal. Rptr. 2d 703, 708-09 (Cal. Dist. Ct. App. 1999); <u>Balfour, Guthrie & Co. v. Hansen</u>, 38 Cal. Rptr. 525, 534 (Cal. Dist. Ct. App. 1964).

The parties have filed supplemental briefings regarding the enforceability of the consent to assignment clause in the Agreement under California law [24, 25]. It is undisputed that VCA Cenvet is a wholly-owned subsidiary of VCA PAL and that both VCA Cenvet and VCA PAL are under the overall common ownership of VCA Antech, Inc.  (Everett Decl. ¶¶ 3-6).  The Court thus now considers, under the circumstances here, if Plaintiff is the real party in interest with standing to prosecute this action.

Plaintiff and its counsel have represented to the Court that, in light of an error in naming the contracting party in the Agreement, VCA PAL assigned the Agreement and VCA PAL's rights and obligations under it to Plaintiff.  Under

California law, this transfer between corporate entities with common ownership is enforceable, even if done informally as it appears to have been done here.  See Amalgamated Transit Union, 209 P.3d at 943; McNamara Corp. Ltd., 104 Cal. Rptr. at 826; Sexton, 39 Cal. Rptr. at 413.[7]  Under California law, this assignment was allowed to be made without Defendants' consent under the consent to assignment clause in the Agreement.  See id.  The Court is satisfied that Plaintiff is the real party in interest with standing to bring its claims.[8]

  D. Summary judgment standard

  A court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  Parties "asserting that a fact cannot be or is

---

[7] Plaintiff claims:

> After the Agreement was executed, [VCA PAL] management realized that, for a Georgia customer, Cenvet should have been the contracting party instead of PAL.  Thus, the Agreement was transferred from PAL to Cenvet.  There is no formal agreement memorializing this transfer because it is simply an intra-company transfer between a parent and subsidiary, and both companies are under the common ownership of VCA.

(Pl.'s Opp'n to Defs.' Mot. for Summ. J. at 9; Everett Decl. ¶ 7).

[8] The Court notes, however, that if Defendants discover evidence that is inconsistent with the Court's finding that the Agreement was assigned to VCA Cenvet in the manner allowed by California law, Defendants should promptly bring such evidence to the Court's attention so that it may reconsider if it has jurisdiction over the claims asserted in this matter.

genuinely disputed must support that assertion by . . . citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1).

The party seeking summary judgment bears the burden of demonstrating the absence of a genuine dispute as to any material fact. Herzog v. Castle Rock Entm't, 193 F.3d 1241, 1246 (11th Cir. 1999). Once the moving party has met this burden, the non-movant must demonstrate that summary judgment is inappropriate by designating specific facts showing a genuine issue for trial. Graham v. State Farm Mut. Ins. Co., 193 F.3d 1274, 1282 (11th Cir. 1999). Non-moving parties "need not present evidence in a form necessary for admission at trial; however, [they] may not merely rest on [their] pleadings." Id.

The Court must view all evidence in the light most favorable to the party opposing the motion and must draw all inferences in favor of the non-movant, but only "to the extent supportable by the record." Garczynski v. Bradshaw, 573 F.3d 1158, 1165 (11th Cir. 2009) (quoting Scott v. Harris, 550 U.S. 372, 381 n.8 (2007)). "[C]redibility determinations, the weighing of evidence, and the drawing of inferences from the facts are the function of the jury . . . ." Graham, 193 F.3d at

1282.  "If the record presents factual issues, the court must not decide them; it must

deny the motion and proceed to trial."  <u>Herzog</u>, 193 F.3d at 1246.  But, "[w]here

the record taken as a whole could not lead a rational trier of fact to find for the

non-moving party," summary judgment for the moving party is proper.  <u>Matsushita</u>

<u>Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986).

   E. <u>Whether Defendants validly terminated the Agreement</u>

  The law of contract interpretation in California is well established:

> 'Under statutory rules of contract interpretation, the mutual
> intention of the parties at the time the contract is formed governs
> interpretation.  Such intent is to be inferred, if possible, solely
> from the written provisions of the contract.  The "clear and
> explicit" meaning of these provisions, interpreted in their
> "ordinary and popular sense," . . . controls judicial interpretation.
> . . . [L]anguage in a contract must be interpreted as a whole, and
> in the circumstances of the case, and cannot be found to be
> ambiguous in the abstract.  Courts will not strain to create an
> ambiguity where none exists.  Interpretation of a contract "must
> be fair and reasonable, not leading to absurd conclusions."

<u>ASP Properties Grp. v. Fard, Inc.</u>, 35 Cal. Rptr. 3d 343, 351 (Cal. Dist. Ct. App.

2005) (internal citation omitted); <u>see also</u> <u>People ex rel. Lockyer v. R.J. Reynolds</u>

<u>Tobacco Co.</u>, 132 Cal. Rptr. 2d 151, 158-59 (Cal. Dist. Ct. App. 2003).

  Defendants claim they validly terminated the Agreement under paragraph 5

when they gave notice on June 13, 2011, that VCA PAL's services were

terminated and when, under a letter dated July 7, 2011, Defendants tendered a

check in the amount of $211,770 pursuant to paragraph 3.3 of the Agreement.  The

Court disagrees.

Defendants' June 13, and July 7, 2011, letters are the writings by which

Defendants claim to have terminated the Agreement.  In these letters, Defendants

advised VCA PAL that the Agreement was being terminated without reason.  The

July 7, 2011, letter asserts that Defendants obligations under the Agreement are

satisfied by complying with the Loan default obligations set out in paragraph 3.3 of

the Agreement.

In their Motion for Partial Summary Judgment submitted to the Court,

Defendants now claim that the Agreement was terminated because of the

inadequate lab services performed for Defendants under the Agreement.  (Aff. of

William R. Draper, Jr., DVM ¶ 10).  In response, Plaintiff submits the declaration

of Richard Roskell, who states Defendants' termination of the Agreement followed

remarks by Defendants' president, Dr. William R. Draper, about his dissatisfaction

with services and with the negotiations over services to be provided for a new

location for Draper's business in Atlanta.  (Decl. of Richard Roskell ¶ 8).  The

record evidence regarding the basis for Defendants' termination of the Agreement

is disputed or at least uncertain.  But even if the termination basis was Defendants'

dissatisfaction with the quality of the services rendered, Defendants did not comply

with the terms of the Agreement relating to termination.

The Court is required to determine the intention of the parties based on the

terms of the Agreement.  See ASP Properties Grp., 35 Cal. Rptr. 3d at 351.  The

intention of the parties is evident and unambiguous here.  If Defendants believed

that the Laboratory Services provided to it pursuant to the Agreement were

substandard—as they now contend—the Agreement required Defendants to

"provide written notice . . . setting forth its concerns in reasonable detail" to allow

the provider of the services to "make any necessary changes with respect to its

provision of Laboratory Services."  (Agreement ¶ 1.2).  If Defendants were

dissatisfied with the response, the parties agreed to arbitrate the dispute.  (Id.).  The

intent of the parties was first to try to resolve cooperatively and without litigation

any disputes about quality of laboratory services.  Defendants failed in all respects

to comply with these obligations, and prerequisites, to claiming the right to

terminate the Agreement.

Defendants appear to claim that paragraph 5 of the Agreement allows them

to avoid compliance with paragraph 1.2 of the Agreement because paragraph 5

provides that:

> In the event that [VCA PAL] (i) fails to deliver the Laboratory
> Services in a reasonably prompt manner, (ii) [sic] the Laboratory

> Services are rendered poorly or lack quality in [Defendants']
> reasonable judgment, or (iii) [VCA PAL] otherwise materially
> breaches this Agreement, then the [Defendants] may, with thirty
> (30) days' advance written notice, terminate this Agreement.

(Id. ¶ 5).  If Defendants terminated the Agreement, they were required to repay "all outstanding (and prorated, as applicable) principal of the Loan and accumulated interest."  (Id.).  Defendants apparently contend that they may unilaterally terminate the Agreement if "the Laboratory Services are rendered poorly or lack quality in [their] reasonable judgment," despite the process described in paragraph 1.2.  (Id.).

The Court acknowledges the similar language in paragraphs 1.2 and 5. Defendants' reasoning that paragraph 5 gives to them the unilateral right to terminate if "Laboratory Services are rendered poorly or lack quality" would render meaningless paragraph 1.2's notice and arbitration provision.  (Id.).  To accept Defendants' interpretation of the Agreement violates the principle of contract interpretation that terms should be read to give meaning and effect to the intent of the parties.  See ASP Properties Grp., 35 Cal. Rptr. 3d at 351.  The notice and arbitration provision of paragraph 1.2 and termination provision of paragraph 5 are consistent and set out a process that gives effect to the parties' intent.

Paragraph 1.2 obligates the parties to try to resolve any quality of services disputes by offering VCA PAL the chance to remedy Defendants' expressed

22

concerns about the quality of the Laboratory Services delivered.  If VCA PAL does not satisfactorily respond, Defendants are required to submit to arbitration the claim that the services rendered were inferior.  If the arbitrators find that the Laboratory Services are substandard, then Defendants may terminate the Agreement pursuant to paragraph 5.[9]

The Court thus finds that Defendants do not have a sufficient basis to terminate the Agreement and for this reason Defendants' request for summary judgment that the Agreement was validly terminated is required to be denied.

F.     Whether the Agreement limits Defendants' liability in the event of a breach

Defendants next argue that even if they breached the Agreement, paragraphs 3.3 and 5 together provided a limitation of liability, and that Defendants have tendered the damages required.

Unless unconscionable or otherwise contrary to public policy, "limitation of liability provisions have long been recognized as valid in California." Markborough Cal., Inc. v. Superior Court, 277 Cal. Rptr. 919, 925 (Cal. Dist. Ct.

---

[9] Admittedly, the Agreement is not carefully drafted.  For example, paragraph 1.2 provides: "Any issues shall be submitted the issue for binding arbitration." (Agreement ¶ 1.2).  It appears "the issue" is conclusorily redundant.  Paragraph 5 provides: "In the event that [VCA PAL] . . . (ii) the Laboratory Services are rendered poorly or lack quality."  (Id. ¶ 5).  It appears that paragraph 5 intends to mean "(ii) renders Laboratory Services that are of poor quality or lack quality."

App. 1991).  "[N]o public policy opposes private, voluntary transactions in which one party, for a consideration, agrees to shoulder a risk which the law would otherwise have placed upon the other party."  Tunkl v. Regents of Univ. of Cal., 383 P.2d 441, 446 (Cal. 1963).

Parties may contract to limit damages in the event of certain occurrences.  See Farnham v. Superior Court (Sequoia Holdings, Inc.), 70 Cal. Rptr. 2d 85, 90 (Cal. Dist. Ct. App. 1997); Morris v. Chevrolet Motor Div. of Gen. Motors Corp., 114 Cal. Rptr. 747, 752 (Cal. Dist. Ct. 1974) (unpublished).  Where an agreement provides for a limitation of damages upon termination or a default on a loan, a claim by the non-defaulting or non-terminating party for lost profits or consequential damages is not *per se* barred by the agreement.  See Whittlestone, Inc. v. Handi-Craft Co., 618 F.3d 970, 975 n.2 (9th Cir. 2010).

Paragraph 3.3 of the Agreement addresses circumstances where Defendants are deemed to be in default on the Loan.  It does not apply to an alleged breach as claimed here by Plaintiff.

Paragraph 5 addresses circumstances where either party may terminate the Agreement and provides:

> . . . In the event that [VCA PAL] (i) fails to deliver the Laboratory Services in a reasonably prompt manner, (ii) the Laboratory Services are rendered poorly or lack quality in [Defendants'] reasonable judgment, or (iii) [VCA PAL]

> otherwise materially breaches this Agreement, then the [Defendants] may, with thirty (30) days' advance written notice, terminate this Agreement; provided, however, that the [Defendants] shall in any case pay [VCA PAL] all outstanding (and prorated, as applicable) principal of the Loan and accumulated interest thereon within sixty (60) days of such written notice (not including previously forgiven or discharged principal and interest).

(Agreement ¶ 5).

Interpreting the Agreement as a whole in the circumstances of this case, there is no language or provision that limits the liability of the parties in the event of a material breach or failure to perform. Paragraphs 3.3 and 5 are not, by their clear and explicit terms, blanket limitations of liability that apply to any breach of the Agreement, but only apply to Defendants' default with respect to the Loan and valid termination, respectively.[10],[11]

_____

[10] The Court also notes that in the event VCA PAL elects to terminate the Agreement pursuant to paragraph 5, there are no terms or provisions that calculate or limit its possible recovery for Defendants' "material breach of the terms and provisions" of the Agreement. This is further support for concluding that the Agreement only limited liability in the event Defendants defaulted on the Loan or validly terminated the Agreement.

[11] The Agreement further requires that Defendants satisfy the Minimum Average Annual Fee of $114,000 per year during the seven-year Term of the Agreement, or that the total amount of fees paid to VCA PAL during the Term be no less than $798,000. While the Agreement defines the remedies available to VCA PAL the event of default on the Loan by Defendants as "intended to compensate [VCA PAL] for the Loan and concessions provided" by the Agreement and defines Defendants obligations in the event they validly terminate, there is no provision in the Agreement that limits VCA PAL's recovery for lost profits and damages

The Court finds that there is no limitation of liability or liquidated damages provision in the Agreement that applies to material breaches by either party and Defendants' liability to Plaintiff for any breach of the Agreement is a question of fact to be determined at trial.

## III.   CONCLUSION

For the foregoing reasons,

**IT IS HEREBY ORDERED** that Defendants' Motion for Partial Summary Judgment [15] is **DENIED**.

**SO ORDERED** this 31st day of August, 2012.

WILLIAM S. DUFFEY, JR.
UNITED STATES DISTRICT JUDGE

---

should Defendants breach the Agreement's terms, to include the requirement to pay the Minimum Average Annual Fee.  The Court finds this is further indication that the parties intended that the remedies provided in paragraphs 3.3 and 5 were, by their clear and explicit terms, to be limited to circumstances where Defendants defaulted on the Loan or validly terminated the Agreement—and not, as Defendants suggest, for any and all breaches of the Agreement.